```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
LUIS ANDINO AND DIALLORAFIK        :
A. MADISON,                        :
                                   :    08 Civ. 558 (VM)
                   Plaintiffs,     :
                                   :    DECISION AND ORDER
      -  against  -                :
                                   :
Brian Fischer et al.,              :
                                   :
                   Defendants.     :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

### I.  BACKGROUND

Pro se plaintiffs Luis Andino ("Andino")[1] and DialloRafik A. Madison ("Madison") brought this action alleging violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983; 28 C.F.R. § 35.134; and the First, Eighth and Fourteenth Amendments of the United States Constitution.  Madison's claims arise from alleged failure by defendants to provide a reasonable accommodation pursuant to the ADA in connection with his suffering from post-traumatic stress disorder and their retaliation for his request, as well as from alleged harassment and retaliation for Madison's efforts to assist Andino in filing certain grievances with officials of the New York State Department of

---

[1]  Andino's claims were voluntarily dismissed following a settlement with defendants.

Correctional Services ("DOCS"). Defendants (collectively, "Defendants"), who consist of various DOCS officials, moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Madison moved to amend the complaint by adding additional defendants and claims or to supplement the complaint.

By Order dated December 18, 2009, Magistrate Judge Ronald L. Ellis, to whom this matter had been referred for supervision of pretrial proceedings, issued a Report and Recommendation (the "Report"), a copy of which is attached and incorporated herein, recommending that Madison's motions to amend or supplement the complaint be denied and that Defendants' motion to dismiss be granted. Madison did not file objections to the Report by the applicable deadline as specified in the Report, although the Court granted his requests for extensions on two occasions. For the reasons stated below, the Court adopts the recommendations of the Report in their entirety.

## II. **STANDARD OF REVIEW**

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law.

-2-

Fed. R. Civ. P. 72(b); see also Thomas v. Arn, 474 U.S. 140, 149 (1985); Greene v. WCI Holding Corp., 956 F. Supp. 509, 513 (S.D.N.Y. 1997). "Where a party makes a 'specific written objection ... after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." Cespedes v. Coughlin, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)); Fed. R. Civ. P. 72(b). The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149. A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge as to such matters. See Fed. R. Civ. P. 72(b); DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

## III.  DISCUSSION

Having conducted a full review of the factual record in this litigation, including the pleadings, and the parties' respective papers submitted in connection with the underlying motions and in this proceeding, as well as the Report and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the recommendations made in the Report are not clearly erroneous or contrary to

-3-

law and are thus warranted. Accordingly, for substantially the reasons set forth in the Report the Court adopts the Report's factual and legal analyses and determinations, as well as its substantive recommendations, in their entirety as the Court's ruling on the underlying motions.

## IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge Ronald L. Ellis dated December 18, 2009 (Docket No. 48) is adopted in its entirety, and the motions (Docket Nos. 33, 34 and 37) of plaintiff DialloRafik A. Madison for leave to amend or supplement the complaint herein are DENIED, and the motion of defendants (Docket No. 25) to dismiss the complaint is GRANTED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:     NEW YORK, NEW YORK
           17 March 2010

Victor Marrero
U.S.D.J.

-4-

**LUIS ANDINO, et al.,**
**v.**
**BRIAN FISCHER, et al.**

**08  Civ.  558**

**Report and Recommendation of**
**Magistrate Judge Ronald L. Ellis**
**dated December 18, 2009**

**Attachment to the Court's**
**Decision and Order**
**dated March 17, 2010**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-18-09

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**LUIS ANDINO, et al.,**

                    **Plaintiffs,**

         - against -

**BRIAN FISCHER, et al.,**

                    **Defendants.**

**REPORT AND**
**RECOMMENDATION**

**08 Civ. 558 (VM) (RLE)**

**To the HONORABLE VICTOR MARRERO, U.S.D.J.:**

**I. INTRODUCTION**

*Pro se* Plaintiffs Luis Andino and DialloRafik A. Madison brought this action under the
Americans with Disabilities Act, the Rehabilitation Act, and the First, Eighth, and Fourteenth
Amendments. On June 1, 2009, Andino was dismissed from this action as part of a stipulation of
settlement in another action in the Western District of New York. (*See* Doc. No. 47.) Now
pending before the Court are 1) Defendants' Pre-Answer Motion to Dismiss pursuant to Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 25); 2) Madison's Motion for leave to
supplement the Complaint in response to the Motion to Dismiss (Doc. No. 37); 3) Plaintiffs'
Motion for leave to Amend the Complaint in Response to Defendants' Motion to Dismiss (Doc.
No. 33); and 4) Madison's motion for permission to amend the Complaint by adding additional
defendants and claims (Doc. No. 34). For the reasons that follow, Madison's Motions to Amend
or to Supplement his Complaint are **DENIED, except insofar** as he provides related and
supplemental allegations that I consider in resolving Defendants' Motion, and I recommend that
Defendants' Motion to Dismiss be **GRANTED**.

## II. BACKGROUND

### A. Case History

Andino and Madison filed the Complaint against the Department of Corrections; Commissioner of the Woodburne Correctional Facility, Brian Fischer; and various correctional officers and other correctional facility staff. Their claims arise out of alleged violations of constitutional rights. Specifically, Andino and Madison allege violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983; 28 C.F.R. § 35.134, and the First, Eighth, and Fourteenth Amendments of the United States Constitution. (Compl., Jan. 23, 2008, ¶ 1.) They sued all non-entity Defendants in both their individual and official capacities. (Compl. ¶¶ 12-13.)

On behalf of all but one of the served Defendants, the New York State Attorney General ("AG") filed a pre-Answer Motion to Dismiss on September 5, 2008. (Doc. No. 25.) On October 28, 2008, and again on November 7, 2008, Madison moved for leave to supplement the Complaint in response to Defendants' Motion to Dismiss. Additionally, on October 16, 2008, Madison sought leave to amend the Complaint by adding additional defendants and claims. By Order dated December 5, 2008, the Court indicated that it would simultaneously consider and resolve Defendants' Motion to Dismiss and Plaintiffs' Motions to Amend or Supplement the Complaint. (*See* Doc. No. 39.) Specifically, Madison's Motion to Amend is also considered as his response to Defendant's Motion to Dismiss. On January 20, 2009, Madison wrote to the Court requesting the opportunity to file a Reply to Defendants' Response to his Motion to Amend the Complaint and Sur-Response to their Motion to Dismiss ("Madison's Reply"). He

2

indicated that he had received new information and asked that he be allowed to file this reply

with the Court by February 20, 2009. Madison subsequently submitted that reply. (*See* Doc. No.

41.) Because Andino has been dismissed, this Report and Recommendation addresses only

Madison's claims and motions, and Defendants' submissions as they pertain to Madison.

**B. Defendants**

The Complaint exceeds 150 paragraphs and identifies numerous individuals, only some

of whom were named as Defendants. Additionally, service has not been effected as to all of the

individuals identified as Defendants. The Court considers Madison's allegations only as to the

served Defendants, namely: New York State Department of Correctional Services ("DOCS");

DOCS Commissioner Brian Fischer; Superintendent Raymond J. Cunningham; Deputy

Superintendent of Programs Jean King; Deputy Superintendent of Security Paul Gonyea; Deputy

Superintendent of Administration Peter Chiavaro; DOCS ADA Coordinator Robert Raymond;

former DOCS Affirmative Action Administrator Earline Corbitt; Lieutenants J. Meehan and

Steven Katz; Sergeant William Holloran; and Correction Officers Michael Picard, Douglas D.

DePaolo, and Daniel J. Mazzaraco. (*See* Defs.' Mem. at 2 n.1.) A final served Defendant, George

Cook, the County Clerk of the City of Woodburne, was served on June 2, 2008, and has not

requested representation from the AG. Nonetheless, the AG maintains that the case should be

dismissed against Cook because of Madison's failure to allege sufficient personal involvement.

(Defs.' Mem. at 2 n.1, 20-21.) I recommend that any claims as to individuals and entities either

listed in the Complaint or named but not served should be dismissed, without prejudice. FED. R.

CIV. P. 12(b)(5); FED. R. CIV. P. 4(m); (*see* Defs.' Mem. at 2 n.1). Moreover, as this

Recommendation indicates, Madison fails to allege specific facts against certain unnamed and/or

3

unserved defendants. His claims as to these purported defendants will be addressed to the extent that I recommend that they by dismissed, with prejudice.

## C. Madison's Claims

For purposes of resolving the instant motions, all well-pleaded allegations are accepted as true. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Furthermore, the Court considers any materials attached as exhibits part of the pleadings. FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).

### 1. Madison's First Claim: Denial Contrary to ADA Reasonable Accommodation

Madison suffers from Post-Traumatic Stress Disorder ("PTSD"), which is recognized as a "disability" by Title II of the ADA and the Rehabilitation Act. (Compl. ¶ 76.) Beginning on or about November 15, 2006, Madison was consistently missing or tardy for diet (kosher) meals in the mess hall and was told by Sergeant Kevin G. Krom that he would be placed in keep-lock if this continued. (*Id.* at ¶ 77-78.) Madison conveyed his condition to the food service administrator, Sharon Hornbeck (not a Defendant), on July 15, 2007, and told her that he wanted to be fed in his cell. (*Id.* at ¶¶ 79-82.) On July 18, 2007, Madison submitted a "Request for Reasonable Accommodations 2612 Form" with the assistance of his prison psychiatrist, Dr. Myung Lee, specifically asking to be added to the feed-in program.[1] (*Id.* at ¶ 84, Ex. 7.) On July 26, 2007, Gibson spoke with Madison and indicated that Madison's request for "reasonable accommodations" would be denied because the request was on the wrong form. (*Id.* at ¶¶ 91-95.) Following that conversation, Madison wrote to Deputy Superintendent of Administration, Defendant Peter Chiavaro, who would be deciding Madison's request, and set forth further

---

[1]The feed-in program allows inmates to be fed in their cells instead of eating in the mess hall. (*Id.* Ex. 7.)

4

explanations for why he should be given "reasonable accommodations." (*Id.* at ¶ 99, Ex. 7.) Later

on that same day, Chiavaro denied Madison's request, stating that the symptoms of his PTSD did

not justify an accommodation. (*Id.* at ¶¶ 99-101, Ex. 7.) On August 3, 2007, after receiving the

proper form, "Request for Reasonable Accommodation 2614 Form," Madison had Dr. Lee assess

his mental health condition, and Dr. Lee signed the feed-in request. (*Id.* at ¶¶ 102-04, Ex. 7.) On

September 5, 2007, Defendant King denied Madison's request. (*Id.* at ¶¶ 123-24, 171.) Madison

maintains that he complained to Defendants Raymond and Corbitt about the denial (*id.* at ¶¶ 122,

167), and that Defendant Cook had created the related ADA policies that should have protected

Madison and should have provided for reasonable accommodations (*Id.* at ¶¶ 22, 163).

### a. Retaliation for Seeking Reasonable Accommodation

Madison maintains that as a result of his request to participate in the feed-in program,

Correctional Officer Clark and two John Doe Defendants entered a false misbehavior report

against him. (Compl. ¶¶ 85-86.) These individuals have not been served. Madison also alleges

that he was harassed by various officers, including Gibson, because of his request. (*Id.* at ¶¶ 91-

95, 112.)

### 2. Madison's Second Claim: Associational Right/Retaliation for Assisting Andino & For Filing Grievances

Madison alleges he was harassed and retaliated against for assisting Andino and that these

actions took the form of illegally searching his legal documents, in particular legal mail, and

filing false misconduct reports against him. (*See, e.g.*, Compl. at ¶¶ 113-20, 125-29, 132, 153-

57.) Specifically, Madison filed a grievance against Defendant Mazzaraco alleging that

Mazzaraco had illegally searched Madison's files in retaliation for his complaints against named

Defendants Holloran and DePaolo, and for assisting Andino. (*Id.* ¶¶ 113-14; 125-32.) Madison

5

maintains that these Defendants issued a false Tier II misbehavior report, which Defendant Meehan later changed to a Tier III report, to affect Madison's earliest release date. (*Id.* at ¶¶ 115, 119-21, 126-32, 129-32, 145-47; *see* Defs.' Mem. at 8.)

On September 12, 2007, Defendant Cunningham indicated he would look into Madison's claim that Mazzaraco had written a false misbehavior report because Madison had helped Andino. Cunningham advised Madison not to "go down the drain" with Andino. (*Id.* at ¶¶ 139-40; 169.) On December 12, 2007, allegedly in retaliation for Madison's grievance filed against him, Holloran instructed Madison to remove his shoes in an effort to degrade Madison. (*Id.* at ¶ 154.) As evidence of the purported conspiracy to retaliate, Madison also mentions that non-defendant Astras asked Madison about Andino, and that Astras said Andino was known as a "troublemaker." (*Id.* at ¶¶ 106-09.)

### 3. Madison's Third Claim: Due Process Violations

Madison alleges that on September 18, 2007, Chiavaro held a "biased" Tier III disciplinary hearing where he failed to assess properly Madison's mental health and found him guilty of all charges despite the fact that all of the searched mail was legal mail, and imposed a 21-day keep-lock sanction. (Compl. ¶ 143.) Furthermore, on November 26, 2007, Madison contends that Defendant Katz held a biased Tier II hearing, finding Madison guilty of all charges from Correctional Officer Storey's false misbehavior report. (*Id.* at ¶ 153.)

### 4. Relief Sought by Madison and Administrative Exhaustion

Madison seeks compensatory, punitive, declaratory, and injunctive relief to redress the continuing deprivation of his rights. (Compl. ¶ 162.) Pursuant to the Prison Litigation Reform Act, he must have exhausted all claims before brining this case. *See Verley v. Wright*, No. 02 Civ.

6

1182 (PKC), 2007 WL 2822199, at \*5 (S.D.N.Y. Sept. 27, 2007) (*quoting* 42 U.S.C. § 1997e(a)). The PLRA exhaustion requirement requires a prisoner to exhaust all possible administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93, 103 (2006); 42 U.S.C. § 1997e(a).

Madison provides evidence that his first claim is exhausted, and most of his second claim is exhausted. He does not allege that he has exhausted his third claim relating to due process violations and he concedes that he has failed to exhaust his September 12, 2007 retaliation claim against Cunningham. (*See* Defs.' Mem. at 10.). He maintains, however, that he feared further retaliation if he pursued his complaints as to Cunningham. This reason is unsubstantiated and unpersuasive because it is unclear what sort of retaliation Madison faced if he complained about Cunningham. Cunningham allegedly denied Madison's request to change a date for a real estate course; he was not implicated in any of the "biased" disciplinary hearings that allegedly resulted in more prison time for Madison. In fact, Cunningham offered to look into the matter of the misbehavior reports. (Compl. at ¶140.) Although the doctrine of equitable estoppel may bar defendants' affirmative defense of non-exhaustion, Madison's allegation of retaliation against Cunningham does not meet the standard such that he may claim equitable estoppel. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (finding equitable estoppel *might* exist where the plaintiff was both verbally and physically threatened and abused by correctional officers so that plaintiff would not pursue his claims). I recommend that Madison's due process and retaliation claims as to Cunningham be **DISMISSED, with prejudice,** for failure to exhaust.

7

## III. DISCUSSION

### A. Madison's Motions to Amend/Supplement the Complaint

#### 1. Legal Standard

Generally, leave of court to amend pleadings should be freely given "when justice so

requires." FED. R. CIV. P. 15(a)(2); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234

(2d Cir. 1995). "Reasons for a proper denial of leave to amend include undue delay, bad faith,

futility of the amendment, and perhaps most important, the resulting prejudice to the opposing

party." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981);

*Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998);

*see Cevasco v. National R.R. Passenger Corp.*, No. 04 Civ. 5760 (PAC) (GWG), 2007 WL

4440922, at *3 (S.D.N.Y. Dec. 18, 2007) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Further, permission to file supplemental pleadings under Rule 15(d) may be granted "when the

supplemental facts connect it to the original pleading." *See Quaratino v. Tiffany & Co.*, 71 F.3d

58, 66 (2d Cir. 1995); *see also Corum v. Beth Israel Medical Center*, 359 F. Supp. 909, 914

(S.D.N.Y. 1973) (noting that supplementing pleadings with transactions and occurrences since

the date of the original proceedings complied with Rule 15(d) and may support policy

considerations such as judicial economy). Rule 15(d) "permits a party to move to serve a

supplemental pleading and the district court may grant such a motion, in the exercise of its

discretion, upon reasonable notice and upon such terms as may be just." *Quaratino*, 71 F.3d at

66. Courts determining whether to grant a motion to supplement pleadings based on Rule 15(d)

should contemplate prejudice to the opposing party and, in their discretion grant

"supplementation [where it] will promote the economic and speedy disposition of the

8

controversy between the parties, will not cause undue delay or trial inconvenience, and will not

prejudice the rights of any other party." *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989)

(referencing *LaSalvia v. United Dairymen*, 804 F.2d 1113, 1119 (9th Cir. 1986), *cert. denied*,

107 S. Ct. 3212 (1987); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1504,

at 542-43 (1971)).

### 2. Madison's Motion for Leave to Amend His Complaint In Response to Defendants' Motion to Dismiss

On October 28, 2008, Madison moved for leave to Amend his Complaint. (Notice of

Mot. for Leave to Amend Compl. in Response to Mot. to Dismiss, Oct. 28, 2008 (Doc. No. 33)).

The three paragraphs he seeks to add to his Complaint provide no new substantive facts but

define and describe the roles and relationships of the respective Defendants. They set forth the

basis on which DOCS is alleged to be liable for the actions of its individual employees,

indicating that all Defendants conspired to deprive Madison of his constitutional rights, and that

individual Defendants acted outside the scope of their employment and official duties when

conspiring against Madison.

To the extent that Madison moves to add allegations pertaining to liability and the

capacity in which he seeks to sue named Defendants, his application is granted for the limited

purpose of addressing the instant Motion to Dismiss. To the extent that Madison moves to add a

claim of conspiracy, his request is **DENIED**. Madison has failed to make any allegations with

sufficient factual detail or provide any evidence to support his conclusory statement that facility

officials and Defendants acted in concert to retaliate against him. His mere conclusions and

reference to a conspiracy are insufficient to satisfy the pleading standards and, absent more

9

specificity, are meritless. *See Hudson v. Lockhart,* 554 F. Supp. 2d 494, 497 (S.D.N.Y. 2008)

(referencing *Dwares v. City of New York*, 985 F.2d 94, 100-01 (2d Cir. 1993)).

### 3. Madison's Motion for Leave to Supplement Complaint in Response to Defendants' Motion to Dismiss

On or about November 7, 2008, Madison further moved to supplement his Complaint

(Doc. No. 37.) to add allegations against Dr. Farago and Lori Cunningham, neither of whom is

named as a Defendant in the original Complaint, and neither of whom has been served. The

Court will consider this request by Madison as a motion to add defendants and claims.

Madison was interviewed by Dr. Farago on November 6, 2008, as a result of Madison's

complaints regarding the "retaliatory conduct, conspiracy, deliberate indifference, and the

discrimination that he had experienced." (Notice of Mot. for Leave to Supp. Compl. in Response

to Mot. To Dismiss, Nov., 7, 2008, ¶¶ 340-42.) He states that he raised complaints with Dr.

Farago about Lori Cunningham, his social worker, and asked to be reassigned. Dr. Farago said

that Madison would not be reassigned, and if he continued to file complaints against staff, they

would close his case and deny him treatment. (*Id.* ¶ 345.) It appears that the complaints against

Lori Cunningham were based on Madison's assessment that she has failed to assist him in getting

housing accommodations for his mental health needs. Madison also maintains that he has been

deprived of mental health care, and has been experiencing migraine headaches, anxiety and

helplessness as a result of Defendants' actions. (*Id.* ¶ 347.)

The facts giving rise to the claims against Dr. Farago and Lori Cunningham occur

subsequent to the events in Madison's original Complaint and, though relating to Madison's

mental health,  are otherwise distinct from the current claims. It appears that the events related to

Dr. Farago and Lori Cunningham occurred after Madison had been transferred out of

10

Woodbourne. Adding these individuals as Defendants and these claims to this action would likely be prejudicial, both to Dr. Farago and Lori Cunningham, as it is not clear whether they have notice of Madison's allegations against them and the original Defendants. Finally, such a supplementation does not aid in the efficient resolution of the instant action. Therefore, I recommend that Madison's application to add these Defendants and claims be **DENIED**.

### 4. Madison's Motion to Amend/Supplement His Complaint

On October 16, 2008, Madison filed a motion to supplement/amend his Complaint, seeking to add a number of new claims, all arising after January 23, 2008, and approximately seventeen new defendants, eleven of whom are at Mid-State or Downstate Correctional Facilities, and amending the names of two defendants in the original complaint. (Doc. No. 34.) Madison alleges that (1) he was arbitrarily and unreasonably expelled from the Bard College educational program without a hearing and in violation of his due process rights; (2) Defendants failed to provide him with notice of an earned eligibility credits determination within thirty days of his parole hearing, and conspired to deprive him of his liberty interest in release on parole; (3) he was unlawfully transferred to Mid-State via Downstate in retaliation for filing a Complaint; (4) Defendants conspired to either open his legal mail or fail to mail his correspondence at Downstate and Mid-State; (5) Defendants conspired to discriminate against him by placing him in a double-cell with deliberate indifference to his PTSD, and by transferring him to Mid-State, which is unsuitable for mental health reasons; (6) Defendants conspired to deny him access to the law library; and (7) Defendants are retaliating against him for bringing the instant lawsuit. Madison seeks $3,150,000 in compensatory and $5,600,000 in punitive damages. (*See* Reply Mem. in Further Supp. of Defs.' Mot. to Dismiss & in Opp'n to Pl. Madison's Mot. for Leave to

11

Amend the Compl. ("Defs.' Reply"), Jan. 16, 2009 at 2.) Because these claims set forth events "which have happened since the date of the pleading," I construe this application as a Motion to Supplement, and review it pursuant to Rule 15(d). *See* FED. R. CIV. P. 15(d).

Madison maintains that these claims "relate back" to those in his original Complaint and that many of the amended claims address ongoing retaliation. The majority of the identified individuals are not from Woodbourne and have minimal, if any, relationship with the named Defendants in Madison's original Complaint. Madison merely argues that the supplemental claims are sufficiently related to the original claims based on the sequence of events that has taken place since the original Complaint. (Madison's Reply Affidavit in Support of Motion to Amend/Supplement His Complaint, Feb. 2, 2009 at 2 (Doc. No. 41)). Furthermore, the common Defendants include those in supervisory roles and, as discussed below, Madison generally fails to allege personal involvement of these Defendants. Finally, Mid-State is located in the Northern District of New York (*see* Defs.' Reply at 6), thus raising questions about the Southern District as a proper venue for these claims. On balance, and having considered the factors for granting supplementation of a Complaint, and finding that the claims are not sufficiently related to the allegations in the original Complaint, I recommend that Madison's application be **DENIED, without prejudice**.

Madison also seeks to clarify the names of two unnamed and unserved Defendants discussed in the original Complaint, identifying one John Doe Defendant as Larry Greenway and correcting one individual's name from Paul McNulty to Ryan McNulty. Madison's only allegation against Greenway is that he forced non-defendant Storey to file an out-of-place report against Madison. (Compl. ¶ 152.) Madison's only allegation against McNulty is that he visited

12

Madison's doctor, Dr. Lee, for purposes of intimidating Dr. Lee and coercing him to disprove Madison's accommodation request. (*Id.* at ¶ 133.) Defendants indicate that neither McNulty nor Greenway was ever served. Claims against these two individuals may be dismissed both pursuant to Rule 12(b)(5) and because Madison has failed to allege facts sufficient to comprise any meritorious cause of action. I recommend they be **DISMISSED**.

## B. Defendants' Motion to Dismiss

### 1. Legal Standard

Rule 12(b)(1) provides for dismissal of claims or complaints where the district court lacks the statutory or constitutional power to adjudicate them. FED. R. CIV. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Although Rule 12(b)(1) implicates the court's jurisdiction and such matters should be resolved first, the same legal standards apply to motions to dismiss brought pursuant to Rule 12(b)(1) and 12(b)(6). *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (*citing Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995)). Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). The test is not "whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (*citing Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)). In reviewing a 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true, and all reasonable inferences are drawn in the plaintiff's favor. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir. 2000); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73

13

(1984); *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). A court does not,

however, have to accept as true "conclusions of law or unwarranted deductions of fact[,]" *First*

*Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994), *cert. denied*, 513 U.S.

1079 (1995), and the court employs a "flexible plausibility standard," which requires the pleader

to supplement a claim with factual allegations where necessary to "render the claim plausible."

*Bilello v. JPMorgan Chase Retirement Plan*, No. 07 Civ. 7379 (DLC), 2009 WL 980846, at *3

(S.D.N.Y. Apr. 10, 2009) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008)).

A *pro se* complaint is reviewed under a more lenient standard than that applied to "formal

pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also*

*Boddie v. Schneider*, 105 F.3d 857, 860 (2d Cir. 1997); *Erickson v. Pardus*, 551 U.S. 89, 94

(2007), and the court should "allow[] borderline cases to proceed," *Fleming v. United States*, 146

F.3d 88, 90 (2d Cir. 1998); *Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005). Plaintiffs'

*pro se* pleadings "must be read liberally and should be interpreted 'to raise the strongest

arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (*quoting*

*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Courts may consider the allegations

contained in *pro se* plaintiffs' memorandum of law, where those allegations are consistent with

the allegations in the complaint. *See Donahue v. United States Dep't of Justice*, 751 F. Supp. 45,

49 (S.D.N.Y. 1990). This deference is particularly important where the plaintiff is alleging civil

rights violations. *See Branum v. Clark*, 927 F.3d 698, 705 (2d Cir. 1991); *Phillip v. University of*

*Rochester*, 316 F.2d 291, 293-94 (2d Cir. 2003).

Further, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief, in order to give the defendant

14

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). When a defendant challenges the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. V. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (footnote omitted). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1940 (2009). While held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal. *See Boomer v. Lanigan*, No. 00 Civ. 5540 (DLC), 2001 WL 1646725 at *2 (S.D.N.Y. Dec. 17, 2001). Moreover, a plaintiff must do more than plead "[c]onclusory allegations or legal conclusions masquerading as factual conclusions[,]" *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.34(1)(b) (3d ed. 1997)). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of actions's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1940.

Here, Defendants claim Madison's Complaint should be dismissed in its entirety because: 1) the Eleventh Amendment bars monetary damage claims against persons sued in their official capacity pursuant to § 1983; 2) monetary damages claims against Defendants in their individual capacity are not a type of relief available under the ADA; 3) Madison has failed to state a valid ADA claim against Defendants in their official capacities; 4) any punitive damages and

15

injunctive/declaratory relief sought by Madison is not available, moot, or without merit; 5) Madison's claims against supervisory Defendants fail to allege sufficient personal involvement; 6) Madison's § 1983 claims fail because they do not allege conduct rising to an unconstitutional level; and 7) Madison's ADA claim fails to allege actual violations and animus on the part of Defendants.

### 2. Title II of the ADA and Sovereign Immunity

"New York has not waived its sovereign immunity as to suits seeking either monetary or injunctive relief in federal court." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 322 (S.D.N.Y. 2007) (referencing N.Y. CT. CL. ACT § 8 (McKinney 2006)). As a general matter, suits against the Department of Corrections, a New York State agency, for money damages are barred by the Eleventh Amendment. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). The immunity extends to damages actions against state officials sued in their official capacities because the state is the real party in interest, *see Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Denis v. N.Y.S. Dep't of Correctional Services*, No. 05 Civ. 4495 (LAK) (AJP), 2006 WL 217926, at *12 (S.D.N.Y. Jan. 30, 2006). This includes suits against employees of DOCS and its facilities. *Verley v. Wright*, No. 02 Civ. 1182 (PKC), 2007 WL 2822199, at *8 (S.D.N.Y. Sept. 27, 2007); *Davis*, 316 F.3d at 101; *Johnson v. Goord*, No. 01 Civ. 9587 (PKC), 2004 WL 2199500, at *4 (S.D.N.Y. Sept. 29, 2004).

To effectively abrogate a state's sovereign immunity, Congress must (1) "make 'its intention to abrogate unmistakably clear in the language of the statute' and (2) act 'pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment.'" *Goonewardena*, 475 F.

16

Supp. 2d at 322 (quoting *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003)). To determine whether there has been a valid abrogation of sovereign immunity for purposes of a private action for damages under Title II of the ADA, the Court should apply the three-part test presented in *United States v. Georgia*, wherein the reviewing court shall determine, on a claim-by-claim basis "'(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II, but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'"[2] *Goonewardena*, 475 F. Supp. 2d at 323 (quoting *Georgia*, 546 U.S. 151, 159 (2006)). If the court concludes there was no violation of Title II, the claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *Goonewardena*, 475 F. Supp. 2d at 323. If the court finds the state's conduct violated the ADA, it addresses whether that conduct also violates the Fourteenth Amendment. *Id.* If so, abrogation is proper under *Georgia. Id.* If the court finds that state conduct did not violate the Fourteenth Amendment, the third prong of the *Georgia* analysis requires the court to consider the *City of Boerne* tripartite congruence and proportionality inquiry to determine whether abrogation in this case would be deemed a valid exercise of Congressional power under § 5 of the Fourteenth Amendment. *Id.; see City of Boerne v. Flores*, 521 U.S. 507, 512 (1997). Courts that have reached this final prong have addressed it as a case-specific inquiry.

---

[2] The Second Circuit has not yet reconciled its ruling in *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001) (plaintiffs bringing ADA Title II claims for monetary relief must establish that the violation was motivated by discriminatory animus or ill will based on disability); *see also Harris v. New York State Educ. Dep't*, 419 F. Supp. 2d 530 (S.D.N.Y. 2006), with the Supreme Court's rule in *Georgia. See Goonewardena*, 475 F. Supp. 2d at 323 n.2. The result is that it remains unclear whether the discriminatory animus requirement articulated in *Garcia* remains in place following *Georgia*. Nevertheless, because *Garcia* applied the discriminatory animus test in order to address the question of abrogation, *Georgia*'s comprehensive test logically would supercede *Garcia*'s animus requirement, except insofar as it may be relevant to the congruence and proportionality inquiry in the third prong of the *Georgia* analysis.

17

*Goonewardena*, 475 F. Supp. 2d at 326 (asking whether abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in the context of access to public education); *see Tennessee v. Lane*, 541 U.S. 509, 530-31 (2004).

### a. The State's Conduct is Not a Violation of Title II of the ADA

The shared purpose of the ADA and Rehabilitation Act is to "'eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied.'" *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To assure that those requirements are met, "reasonable accommodation" may have to be provided to the qualified individual. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273-74 (2d Cir. 2003); *see also Felix v. New York City Transit Authority*, 324 F.3d 102, 107 (2d Cir. 2003). Because Title II's requirements apply with equal force to Rehabilitation Act claims, courts analyze the claims together. *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003); *Henrietta D.*, 331 F.3d at 272. Unless a distinction is pertinent, the Second Circuit treats claims under the two statutes identically. *Henrietta D.*, 331 F.3d at 272; *Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004).

To establish a violation under the ADA, the plaintiff must demonstrate: (1) that he is a "qualified individual" with a disability; (2) that the defendants are subject to the ADA and/or Rehabilitation Act; and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated

18

against by defendants, by reason of [his] disabilit[y]." *Henrietta D.*, 331 F.3d at 272; *Powell*, 364 F.3d at 85. For a claim under the Rehabilitation Act, the plaintiff must also demonstrate that the defendant receives federal funding.

### (1) Madison is Not a Qualified Individual

To demonstrate that he is a "qualified individual with a disability," the plaintiff must establish that he has a physical or mental impairment and provide evidence that such impairment "substantially limits one or more of that person's major life activities." *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 722 (2d Cir. 1994). "Major life activities" include: "caring for oneself, performing manual tasks, seeing, hearing, *eating*, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A)(emphasis added).

Here, Madison alleges that he was diagnosed on September 20, 2001, with post traumatic stress disorder (PTSD). (Compl. ¶ 76.) He complains that his condition makes him incapable of eating meals in the public mess hall (Compl. ¶ 79-81, Ex. 7.), and causes him to be anxious, depressed, withdrawn, and fearful. (Compl. ¶ 84, Ex. 7.) PTSD is a mental or psychological disorder. *See* C.F.R. §§ 84.3 (j)(2)(i) (1997) (the definition of a mental impairment includes any mental or psychological disorder); *Dean v. Westchester County P.R.C.* 309 F. Supp.2d 587, 593 (S.D.N.Y. 2004) (depression is a mental disorder). Madison, however, fails the second part of the test because he has not explained how his mental impairment has limited any of his major life activities. Madison requested feed-in because of his PTSD but never explained why the PTSD hindered his ability to eat in the public mess hall. (Compl. Ex. 7). He merely maintains that because he has PTSD he is owed the "reasonable accommodation" of "feed-in." (*Id.*) While it

19

seems that Madison is arguing that his life activity of "eating" is substantially limited because of

his PTSD, he has not given any explanation of how PTSD has limited his ability to eat in public.

Even assuming all the facts in the light most favorable to Madison, it is still unclear how PTSD

affects Madison's ability to eat in the mess hall or how eating in the mess hall is even a "major

life activity." On these facts, I find that although Madison has a mental impairment, he has failed

to show that his disability limits a major life activity, and therefore he is not a qualified

individual under the ADA.

### (2) Defendants are Subject to ADA/Rehabilitation Act

The Supreme Court has held that the ADA and Rehabilitation Act extend to state prisons.

*Atkins*, 251 F. Supp. 2d at 1231; *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209

(1998) ("the statute's language unmistakably includes state prisons and prisoners within its

coverage"). Since Defendants include the Department of Corrections (DOCS) and many DOCS

employees, Defendants are subject to the ADA and Rehabilitation Act requirements.

### (3) Madison was Not Denied Participation in Public Services

The third factor a plaintiff must establish to prove a violation of the ADA is that he was

denied the opportunity to participate in or benefit from defendants' services, programs, or

activities, or was otherwise discriminated against by defendants, by reason of his disability. *See*

42 U.S.C. § 12132. "A disability discrimination claim may be brought either on the theory that

defendant failed to make reasonable accommodations or on a more conventional disparate

treatment theory, or both. This is because the ADA not only protects against disparate treatment,

it also creates an affirmative duty in some circumstances to provide special, preferred treatment,

or 'reasonable accommodation.'" *Henrietta D.*, 331 F.3d at 275 (quoting *Dunlap v. Ass'n of Bay*

20

*Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998)). "[A] claim of discrimination based on a

failure reasonably to accommodate is distinct from a claim of discrimination based on disparate

impact." *Henrietta D.*, 331 F.3d at 276-77. "Quite simply, the demonstration that a disability

makes it difficult for a plaintiff to access benefits that are available to both those with and

without disabilities is sufficient to sustain a claim for a reasonable accommodation." *Id.* at 277.

An ADA plaintiff, however, must demonstrate that a denial of benefits occurred "because of" the

disability. *Id.* at 278 (referencing *Olmstead v. L.C. ex rel. Zimring* , 527 U.S. 581, 601 (1999)

(Kennedy, J., concurring)).

   Here, Madison makes a discrimination claim on the theory that the Defendants failed to

make reasonable accommodations for his disability, and that he was denied reasonable

accommodation. He maintains that Gibson, Chiavaro, and King all caused his request for feed-in

to be denied because of his PTSD. Aside from giving conclusory statements that his request was

denied because of his disability, Madison does not give any reason or indication that the three

Defendants actually denied him feed-in because he has PTSD. None of the Defendants made any

statements to indicate the denial was based on his disability, and none of the DOCS paperwork or

timing of the denial shows that it was based on Madison's PTSD. Moreover, Madison contends

that because he has PTSD, he should have been accommodated with the feed-in program. There

is no logical nexus between post-traumatic stress disorder and the feed-in program as an

accommodation. On the facts alleged, there is no indication that Madison was denied any

reasonable accommodation.

Because Madison has failed to show that the state has violated Title II of the ADA, the

Court need not consider the remainder of the *Georgia* Analysis. *See Goonewardena*, 475 F.

Supp. 2d at 323. I recommend that the claim be **DISMISSED** under Rule 12(b)(6).

Furthermore, "because the ADA targets public entities, individuals cannot be named as

defendants in their individual capacities." *Alster v. Goord*, No. 05 Civ. 10883 (WHP), 2008 WL

506406, at *3, 7 (S.D.N.Y. Feb. 26, 2008) (referencing *Carrasquillo v. City of New York*, 324 F.

Supp. 2d 428, 441-42 (S.D.N.Y. 2004)). Neither Title II nor § 504 of the Rehabilitation Act

provide for individual capacity suits against state officials. *Atkins*, 251 F. Supp. 2d at 1233;

*Garcia*, 280 F.3d at 107. Thus, I recommend that Madison's monetary damages claims under the

ADA against Defendants in their individual capacities be **DISMISSED** under Rule 12(b)(1).

### 3. Non-Monetary Relief Available to Madison for his ADA and Rehabilitation Act Claims
#### a. Declaratory and Injunctive Relief

Claims for declaratory and injunctive relief against State Defendants in their official

capacities and damages claims against them in their personal capacities are not specifically

barred by the Eleventh Amendment. *Johnson v. Goord*, 2004 WL 2199500, at *4; *Verley*, 2007

WL 2822199 at *9; *Davis v. New York*, 316 F.3d 93, 101-02 (2d Cir. 2002). "Title II and

Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established in

*Ex parte Young*, 209 U.S. 123 (1908), proceed against individual officers in their official

capacity." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, when "the problem sought

to be remedied has ceased, and where there is 'no reasonable expectation that the wrong will be

repeated,'" *McLaurin v. Paterson*, No. 07 Civ. 3482 (PAC) (FM), 2008 WL 3402304 at *9

(S.D.N.Y. Aug. 11, 2008); *see also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting

22

*Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)), the claim is moot, and should be dismissed as the Court lacks subject matter jurisdiction. *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). An inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility. *Verley*, 2007 WL 2822199 at *9; *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). It appears that Madison's claims for such relief extended only so far as his denial of participation in the feed-in program at Woodbourne. As he has not indicated that he has applied for, or been denied participation in, such a program at Mid-State, any prospective relief claims should be **DISMISSED**.

### 4. Madison's § 1983 Claims Against Defendants in their Official & Individual Capacities

To withstand a motion to dismiss, a § 1983 complaint must set forth specific factual allegations indicating a deprivation of constitutional rights. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987); *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must show that the conduct in question was committed by a person acting under color of state law, and that the conduct deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). A prerequisite to an award of monetary damages in a civil rights action is a showing of the defendant's personal involvement in the constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *McCoy v. Goord*, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). Thus, a plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). To show personal involvement, the plaintiff must show: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after

23

being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v. Smith*, 781 F.2d 219, 323-24 (2d Cir. 1986)).

Section 1983 itself creates no substantive rights. "It provides only a procedure for redress of the deprivation of rights established elsewhere." *Alster*, 2008 WL 506406 at *3 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)). Section 1983 does not abrogate a state's Eleventh Amendment immunity, including suits against state officials acting in official capacity, and there has been no waiver for § 1983 claims by New York State. *Verley*, 2007 WL 2822199 at *8 (referencing *Quern v. Jordan*, 440 U.S. 332 (1979)); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *see also Spencer v. Does*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983."); *Dove v. Fordham University*, 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999) (referencing *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980)) (absent municipal policy, a plaintiff seeking to establish municipal liability under § 1983 can only meet his burden by establishing that responsible supervisory officials acquiesced in a pattern of unconstitutional conduct by subordinates). Madison fails to meet his burden. Accordingly, to the extent that he asserts § 1983 claims against DOCS, DOCS employees, and all DOCS defendants in their

24

official capacities, I find that those claims are barred by the Eleventh Amendment and I recommend that they be **DISMISSED** pursuant to Rule 12(b)(1).

A §1983 claim can be maintained against individual defendants on the basis of Title II or Section 504 violations. *Goonewardena* 475 F. Supp. 2d at 329 (referencing *Weixel v. Board of Education*, 287 F.3d 138, 151 (2d Cir. 2002)). Madison has alleged violations of Title II of the ADA and of the Rehabilitative Act, but as discussed above, he has failed to state a violation of the ADA. Furthermore, he has failed to state any plausible constitutional claim. Thus, I find that Madison's §1983 claims as to the Defendants in their individual capacities should be **DISMISSED**.

### a. First Amendment and Retaliation

To state a claim for retaliation, the plaintiff must allege facts demonstrating that he engaged in constitutionally protected conduct and that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). However, a complaint that "alleges facts giving rise to a colorable suspicion of retaliation . . . will support at least documentary discovery." *Id.*

While "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report," *Boddie v. Schnieder*, 105 F.3d at 862 (2d Cir. 1997), an inmate has the right to petition the State for the redress of grievances, *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988), and to be free from retaliation resulting from such protected conduct. To establish a claim for unconstitutional retaliation under § 1983, a plaintiff must demonstrate that his conduct was protected by the First Amendment and that the defendants' conduct was

25

motivated, wholly or substantially, by the plaintiff's having exercised those rights. *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Additionally, the plaintiff must prove that the alleged retaliatory action would not have been taken but for his having exercised his constitutional rights. *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976). Thus, action that is taken for both valid and invalid reasons will not be deemed unconstitutional if the action would have been taken for a constitutionally valid reason. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Circumstantial facts, such as the chronology and proximity of purported retaliation to protected conduct, can suggest an improper motive sufficient to withstand a motion to dismiss. *Gagliardi*, 18 F.3d at 194; *Pangburn v. Good*, 1999 WL 222553 at *16 (W.D.N.Y. 1999).

Madison maintains that his earliest release date was January 28, 2008,[3] (Compl. at ¶ 130) and that he was negatively affected by various exchanges with Defendants Mazzaraco, Holloran, and DePaolo that resulted in allegedly false misbehavior reports filed in retaliation against him. On August 10, 2007, Madison alleges that Holloran attempted to engage other correctional officers in retaliation against him for assisting Andino in his lawsuit. (*Id.*, Ex. 9.) On August 11, 2007, Madison contends that Mazzaraco entered his privileged legal mail files on the law library computer. (*Id.* at ¶ 113.) The next day, Madison filed a complaint against Holloran for intimidating him and trying to get other correctional officers to retaliate against Madison for assisting Andino. (*Id.* at ¶ 115.) Madison then filed a complaint with United States Attorney General Gonzales on August 13, 2007, regarding the retaliatory conditions at the facility. (*Id.* at ¶

---

[3]Defendants contend that Madison earliest release date was November 2009. (Defs.' Mem. at 24, Ex. N.) Both parties rely on the parole eligibility dates set by DOCS. Madison's first parole eligibility date was March 23, 2006 and his next parole hearing is schedule for May, 2010. (*See* NYS Department of Correctional Services, http://nysdocslookup.docs.state.ny.us/kinqw00 for Diallo A. Rafik, last visited Dec. 4, 2009.) His conditional release date is July 23, 2011. (*Id.*) It is unclear if the January 28, 2008 date was a parole eligibility date.

117.) On August 21, 2207, Madison alleges that Gonyea "failed to remedy the wrong," when he made a decision about his complaints, yet Madison fails to explain how Gonyea did not remedy the wrong or even explain what Gonyea did or did not say in his decision. (*Id.* at ¶ 118.) Madison merely makes conclusory statements about Gonyea's decision. (*Id.*) A week later, on August 28, 2007, Madison argues that DePaolo tried to intimidate him for complaining against Holloran by asking for Madison's identification card and telling him to "be careful." (*Id.* at ¶ 119-20.) That same day, Madison filed a complaint against DePaolo for harassment and retaliation. (*Id.* at ¶ 121.) Madison filed a complaint against Mazzaraco, Holloran, and DePaolo for retaliation on September 2, 2007. (*Id.* at ¶ 122.) On September 5 and September 6, 2007, Mazzaraco allegedly searched Madison's privileged legal mail files in the law library. (*Id.* at ¶ 125.) On September 6, 2007, Mazzaraco searched Madison's living quarters, found no contraband, (*id.* at ¶ 127) and then filed a Tier II inmate misbehavior report against Madison for failing to follow law library protocol. (*Id.* at ¶ 129.) On September 7, 2007, Madison filed a complaint against Mazzaraco for retaliatory conduct. (*Id.* at ¶ 131.) That same day, he alleges that Mazzaro instructed Meehan to raise the severity level of Mazzaraco's misconduct report from Tier II misconduct to Tier III misconduct, in retaliation for his complaint, and so that Madison would be forced to appear before the parole board with the most severe type of misconduct on his record, thereby affecting his chances of parole and release. (*Id.* at ¶¶ 130-32.) On September 18, 2007, Madison filed another grievance against Mazzaraco for illegal search of his privileged files. (*Id.* at ¶ 145.) On December 12, 2007, Holloran issued an inmate misbehavior report to Madison for failing to comply with Directive 4911, which states that shoes must have straps. (*Id.*, Ex. 12.) Madison contends that Holloran forced him to surrender his shoes and wrote the misbehavior report

27

against him for contraband. (*Id.* at ¶ 154-55.) Madison has exhausted his claims as to Mazzaraco,

Holloran and De Paolo (*Id.* at ¶ 147).

## CHART OF COMPLAINTS & CORRECTIONAL OFFICER ACTIONS

|  | Madison | Mazzaraco | Holloran | DePaolo | Meehan/Other |
|---|---|---|---|---|---|
| 8/10/2007 |  |  | Attempted to have other correctional officers retaliate against Madison for assisting Andino (Compl., Ex. 9.) |  |  |
| 8/11/2007 |  | Entered Madison's privileged legal mail files on law library computer (¶ 113) |  |  |  |
| 8/12/2007 | Filed complaint against Holloran for intimidating him by trying to get other correctional officers to retaliate against him for assisting Andino (¶115) |  |  |  |  |
| 8/13/2007 | Filed complaint with U.S. Attorney General Gonzales (¶ 117) |  |  |  |  |
| 8/21/2007 |  |  |  |  | Gonyea "failed to remedy the wrong" (¶ 118) |
| 8/28/2007 | Filed complaint against DePaolo for harassment and retaliation (¶ 121) |  |  | Tried to intimidate Madison for complaining against Holloran by asking for his identification card and telling him to "be careful" (¶ 119-20) |  |
| 9/02/2007 | Filed complaint against all Defts for retaliation (¶ 122) |  |  |  |  |

28

|  | **Madison** | **Mazzaraco** | **Holloran** | **DePaolo** | **Meehan/Other** |
|---|---|---|---|---|---|
| 9/05-06/2007 |  | Searched Madison's privileged legal mail files in law library (¶ 125) |  |  |  |
| 9/06/2007 |  | Searched Madison's living quarters, found no contraband (¶ 127) and then filed a Tier II misbehavior report against Madison for failing to follow law library protocol (¶ 129) |  |  |  |
| 9/07/2007 | Filed complaint against Mazzaraco for retaliatory conduct (¶ 131) | (Meehan relates to Mazzaraco) |  |  | Mazzaraco instructed Meehan to raise Madison's Tier II misbehavior report to a Tier III so that Madison would be forced to appear in front of parole board with a Tier III misconduct – the highest level of misconduct. Meehan changed the designation from Tier II to Tier III. (¶ 130, 132) |
| 9/18/2007 | Files grievance against Mazzaraco for searching his legal files (¶ 145) |  |  |  |  |
| 12/12/2007 |  |  | Filed a misbehavior report against Madison for wearing incorrect shoes (¶ 154-55) |  |  |

Madison has failed to show that Defendants' conduct was motivated by the exercise of

his First Amendment rights. He lists multiple complaints by him and multiple actions by

Defendants, but he fails to establish a nexus between them. While there is some proximity

between the complaints and the alleged adverse actions, this results from the large number of

complaints in a short period of time. While it is true that there are disciplinary actions taken by Defendants, Madison has failed to show they result from his complaints and could constitute retaliation. Thus, I recommend that Madison's claims against Mazzaraco, Holloran and De Paolo be **DISMISSED** under Rule 12(b)(6).

### b. Personal Involvement

"A plaintiff cannot bring a section 1983 claim against individuals based solely on their supervisory capacity or the fact that they held high positions of authority." *Thomas v. Coombe*, No. 95 Civ. 10342 (HB), 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); *Alster*, 2008 WL 506406 at *4; *Atkins*, 251 F. Supp. 2d at 1233; *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Furthermore, "mere receipt of a letter from an inmate, without more, does not constitute personal involvement for the purposes of section 1983 liability." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Smith v. Masterson*, No. 05 Civ. 2897 (RWS), 2006 WL 2883009, at *13 (S.D.N.Y. Sept. 29, 2006); see also *Sealey v. Giltner*, 116 F.3d 47, 51 (2d. Cir. 1997). Courts have identified five different ways a supervisor can be found personally involved in a section 1983 violation. *See Denis*, No. 05 Civ. 4495 (LAK) (AJP), 2006 WL 217926, at *21; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), *supra* (listing factors).

Even construing Madison's claims liberally, he has failed to sufficiently plead personal involvement of some Defendants. Specifically, while Madison makes allegations against Commissioner Fischer, Superintendent Cunningham, and Deputy Superintendent of Security Gonyea, he does not indicate how they were involved in the conduct which purportedly supports §1983 liability. He spoke and wrote to Cunningham and Gonyea, (Compl. at ¶¶ 140, 144-45), and all issues as to Fischer related only to Andino. (*Id.* at ¶¶ 49, 62.) Madison's alleged

30

interactions with Cunningham and Gonyea do not rise to the level of personal involvement because they do not show direct participation in a constitutional violation, or that the defendants were informed in such a manner as they should have "remedied the wrong." Moreover, Madison identified individuals as defendants and either named and served them, or named them without sufficient allegations of personal involvement. His inability to allege specific wrongdoings against particular defendants properly results in dismissal of the complaint as to such purported defendants. *See Dove*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999). Therefore, I recommend that all § 1983 claims as to all other defendants, served and unserved, be **DISMISSED** under Rule 12(b)(6).

### 5. Relief Sought

#### a. Punitive Damages

Punitive Damages are not available under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189-90 & n.3 (2002). Additionally, to recover punitive damages under § 1983, Madison must allege malicious or wanton behavior by Defendants. *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006). He has failed to meet this standard. I recommend that such relief be **DENIED**.

## IV. CONCLUSION

For the aforementioned reasons, Madison's Motions to Amend/Supplement his Complaint are **DENIED, except insofar** as he provides related and supplemental allegations that I consider in resolving Defendants' Motion, and I recommend that Defendants' Motion to Dismiss be **GRANTED**.

31

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Victor Marrero, 500 Pearl Street, Room 660, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**DATED: December 18, 2009**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

Plaintiff
DialloRafik A. Madison
05-B-1233
P.O. Box 1187
Wende Road
Alden, NY 14004-1187

Counsel for Defendants
Frederick Hongyee Wen
Assistant Attorney General of the State of New York
120 Broadway
New York, NY 10271

32